Flete v New York City Tr. Auth. (2026 NY Slip Op 50121(U))

[*1]

Flete v New York City Tr. Auth.

2026 NY Slip Op 50121(U)

Decided on January 30, 2026

Supreme Court, New York County

Tsai, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2026
Supreme Court, New York County

Anarly Flete, Petitioner,

againstNew York City Transit Authority, METROPOLITAN TRANSPORTATION AUTHORITY, MTA BUS COMPANY, MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, and BUS OPERATOR FREDIE DEANE, Respondents.

Index No. 156651/2025

Prado & Tuy LLP, Manhattan (Dennis J. Feliciano of counsel), for petitioner.Anna J. Ervolina, Brooklyn (Hemala Haribal of counsel), for respondents.

Richard Tsai, J.

The following e-filed documents, listed by NYSCEF document numbers (Motion 001) 1 - 2, 11 — 30 were read on this motion to/for LEAVE TO SERVE A LATE NOTICE OF CLAIM.
Petitioner Anarly Flete seeks leave to serve a late notice of claim upon the New York City Transit Authority (NYCTA), Metropolitan Transportation Authority (MTA), MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority (MABSTOA), and Fredie Dean (collectively, Transit Respondents) pursuant to General Municipal Law §50-e. Transit Respondents oppose the petition.BACKGROUNDOn March 2, 2024, at approximately 9:05 p.m., petitioner allegedly "was involved in an accident with a New York City Transit Bus" (Petitioner's Exhibit E in support of petition [NYSCEF Doc. 8], Claimant's Affidavit ¶ 2). At the time of the incident, petitioner was "a lawfully seated passenger in a 2015 Toyota, via Uber" (id.). Petitioner allegedly ordered an Uber Share, meaning multiple individuals use the same vehicle, as there "was another passenger in the ride share vehicle with [her], but [she] did not know her" (id. ¶ 3; see also Claimant's affidavit, Exhibit 1 [NYSCEF Doc. No. 8], Uber Receipt). Petitioner, the unknown passenger, and the operator were traveling in northern Manhattan.
The incident allegedly occurred at the intersection of 165th Street and Broadway (Claimant's affidavit ¶ 4). While at the intersection, the 2015 Toyota attempted to make a left-hand turn (id.). At the same time, the alleged bus approaching from the opposite direction also attempted a left-hand turn (id.). The two vehicles collided as they both attempted to make the turns (id.).
After the collision, petitioner exited the vehicle and took two pictures of damage to the 2015 Toyota (id. ¶ 7). After taking pictures, petitioner, along with the other unknown passenger, then left the scene without interacting with the bus operator or MTA Supervisor who had later arrived at the scene (id. ¶¶ 6 - 7). Instead, petitioner claims to have informed the Uber driver, a non-party to this action, of some minor injuries and requested that he share the information of the bus operator once he obtained it (id. ¶ 6).
Shortly after the collision, an MTA Supervisor arrived on scene. However, petitioner had "already left the scene before the MTA Supervisor arrived to produce a report" (Petition for leave to file ¶ 8(f); see also Claimant's Affidavit ¶ 7). P. Sanchez, the MTA Supervisor, subsequently completed a "Supervisor's Accident / Incident Investigation Report" on site (see Petitioner's Exhibit C in support of petition [NYSCEF Doc. No 6], Supervisor's Accident / Incident Investigation Report). 
In the report, Sanchez stated that the collision occurred as the two vehicles simultaneously attempted a left-hand turn at the intersection (Investigative Report at 2 — 5). Sanchez noted that "vehicle #2" (which is designated as the 2015 Toyota) suffered slight damage to the left side rear corner and a broken bumper (id. at 2, 4). Additionally, Sanchez indicated that there was only one occupant, including the driver, of vehicle #2, and that no injuries were claimed at that time (id. at 2). Throughout the report, Sanchez noted that no injuries were claimed (id. at 2, 6, and 11). Sanchez's report did not reference petitioner.
After the collision, petitioner "first sought medical treatment from [her] primary care physician in March" (Claimant's affidavit ¶ 8). Petitioner alleges that as "a result of the contact between the New York City Transit Bus and the motor vehicle, she has since suffered pain and injuries to her left shoulder and left knee" (Petition ¶ 8 (g)). After undergoing initial medical treatment, petitioner retained counsel on April 16, 2024 (id. ¶ 9).
Petitioner's counsel contends that, upon retention, "diligent efforts were made by [petitioner's counsel] to obtain information regarding the accident" (id.). Initially, petitioner only provided counsel with "the information of the 2015 Toyota vehicle in which she was a passenger" (id.). Based on this information, counsel contacted "Hereford Insurance Company, the insurance provider for the said motor vehicle," to obtain more information regarding the collision (id.). Ultimately, counsel was informed "after some considerable time, that they did not have any information relating to the accident" (id.). In response, counsel filed a FOIL (Freedom of Information Law) request, which, resulted in counsel's receipt of the required information on August 19, 2024 (id.). 

 DISCUSSION
Under General Municipal Law § 50-e (5), courts have discretion to grant an extension of time for service of a notice of claim.
"In determining whether to grant or deny leave to serve a late notice of claim, the court must consider 'in particular' whether the municipality 'acquired actual knowledge of the [*2]essential facts constituting the claim within [90 days of the claim's accrual] or within a reasonable time thereafter.' Courts are to place 'great weight' on this factor, which the party seeking leave has the burden of establishing through the submission of nonspeculative evidence" (Matter of Jaime v City of New York, 41 NY3d 531 [2024] [internal citations omitted]). "Additionally, the statute requires the court to consider 'all other relevant facts and circumstances' and provides a 'nonexhaustive list of factors that the court should weigh'. One factor the court must consider is 'whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits' "(Matter of Newcomb v Middle Country Cent. School Dist., 28 NY3d 455, 460-461 [2016] [internal citation omitted]). The Appellate Divisions have held that courts must also consider whether petitioner has "a reasonable excuse" for the delay in filing the notice of claim (see e.g. Matter of Vijeu v New York City Health & Hosps. Corp., 202 AD3d 425, 426 [1st Dept 2022]; Matter of McLeod v Department of Sanitation, 183 AD3d 548, 549 [1st Dept 2020]; Matter of Salazar v City of New York, 212 AD3d 633, 634-35 [2d Dept 2023]). "While the statute does not explicitly provide for the consideration of that factor, the statute is nonexhaustive and this factor has firmly taken root in the case law" (Matter of Jaime, 41 NY3d at 541).
However, the "failure to offer a reasonable excuse is not necessarily fatal" (Clarke v New York City Tr. Auth., 222 AD3d 552, 553 [1st Dept 2023]; Guerre v New York City Tr. Auth., 226 AD3d 897, 898 [2d Dept 2024]). "[W]here there is actual notice and absence of prejudice, the lack of a reasonable excuse will not bar the granting of leave to serve a late notice of claim" (Guerre, 226 AD3d at 898 [quotation marks and citation omitted]). Thus, petitioner essentially needs to prove only the first two factors to be entitled to leave to serve a late notice of claim.
A. Excuse for Delay
To the extent that petitioner's counsel implies that law office failure explains the delay in filing a timely notice of claim (see petition ¶ 9), "[a]n excuse of law office failure is not a reasonable excuse for failing to timely serve a notice of claim" (Matter of Aguilera v City of New York, 241 AD3d 1193, 1193 [1st Dept 2025]).
To the extent that petitioner argues that her counsel faced a delay in obtaining the correct information regarding the incident from the insurer and from FOIL requests (Petition ¶ 9), this is also not a reasonable excuse. According to petitioner's counsel, petitioner received information from the FOIL requests on August 19, 2024 (id.). However, despite learning such correct information, the petition for leave to serve a late notice of claim was not filed until nine months later on May 22, 2025, and petitioner does not explain this further delay (see Matter of Vijeu, 202 AD3d 425, 426 [1st Dept 2022] ["Petitioner also failed to establish a reasonable excuse for her 10-month delay in filing a late notice of claim"]; Matter of McLeod, 183 AD3d at 549 [1st Dept 2020] [petitioner failed to provide a reasonable excuse for his extended delay in filing a notice of claim]; Matter of Salazar, 212 AD3d at 634-635 ["petitioner failed to demonstrate a reasonable excuse for the additional nine-month delay between the time she was released from the hospital and the time she commenced this proceeding for leave to serve a late notice of [*3]claim"]).
B. Actual Knowledge
Additionally, petitioner has failed to establish that Transit Respondents had timely, actual knowledge of the underlying facts constituting Flete's claims.
"The actual knowledge requirement contemplates actual knowledge of the essential facts constituting the claim, not knowledge of a specific legal theory" (Matter of Townson v New York City Health & Hosps. Corp., 158 AD3d 401, 403 [1st Dept 2018]; Matter of Grande v City of New York, 48 AD3d 565 [2nd Dept 2008]). However, "knowledge of the facts underlying an occurrence does not constitute knowledge of the claim. What satisfies the statute is not knowledge of the wrong. What the statute exacts is notice of [the] 'claim'" (Chattergoon v New York City Hous. Auth., 161 AD2d 141 [1st Dept 1990]; see also Bullard v City of New York, 118 AD2d 447 [1st Dept 1986]). "The statute contemplates not only knowledge of the facts, but also how they relate to the legal claim to be asserted" (Carpenter v City of New York, 30 AD3d 594, 595 [2d Dept 2006]).
"The evidence of actual knowledge need not be exhaustive, provided the petitioner meets the applicable evidentiary burden" (Matter of Jaime, 41 NY3d at 543). Here, petitioner argues Transit Respondents had actual knowledge imputed to them based on the bus operator's knowledge, and that they obtained actual knowledge based on a contemporaneous investigation.
a. Knowledge Imputed to the Municipality Through the Bus Operator's Involvement
Petitioner argues that Transit Respondents acquired actual knowledge of petitioner's claims based on the bus operator's involvement in the collision. More specifically, that "[p]etitioner's sworn statement that the bus operator directly caused her injury is sufficient to attribute actual knowledge to Respondents" (Petition ¶ 20). Since the bus operator was directly involved in the collision, petitioner essentially argues that knowledge was imputed to Transit Respondents.
When considering knowledge through imputation, "courts should not assume that every municipal employee's knowledge of essential facts is necessarily imputed to the municipality" (Matter of Jaime, 41 NY3d at 540). The Court of Appeals reasoned that "[a]llowing imputation in every case would undermine the purpose of the notice of claim requirement because not every employee's knowledge will necessarily afford the municipality an opportunity to commence a prompt investigation" (id.). "Generally, knowledge of essential facts as to time and place by an actor in a position to investigate will suffice" (id. [emphasis added]). 
Because the bus operator is not "in a position to investigate" (see e.g. Matter of Cani v New York City Health and Hosps. Corp., 242 AD3d 408, 409 [1st Dept 2025]), the bus operator's knowledge of the collision cannot be imputed to Transit Respondents.
Matter of Salazar v Metropolitan Transportation Authority (219 AD3d 1237 [1st Dept 2023]) is instructive. There, the petitioner alleged that the bus had stopped short, causing her to fall to the floor, and that the bus operator had seen her fall. The Appellate Division, First Department ruled that the petitioner did not establish that the respondents had acquired timely, [*4]actual knowledge of the essential facts constituting the claim. The Appellate Division reasoned, "Even assuming that the bus operator saw the incident, his knowledge that petitioner had fallen did nothing to inform respondents that she was actually injured, let alone the extent of her injuries" (id. at 1237). 
Here, because petitioner left the scene without interacting with the bus operator, the record does not support that the bus operator would have knowledge that petitioner was a person who was allegedly injured as a result of the collision. Thus, the bus operator's knowledge of the collision cannot provide Transit Respondents with actual knowledge that petitioner suffered personal injuries. 
b. Knowledge Acquired Through Investigations
Petitioner also argues Transit Respondents had actual knowledge based on the Supervisor's Accident / Incident Investigation Report, Operator's Accident Report, and Operator's Daily Trip Sheet, and Security footage from the bus (collectively, Investigative Reports). Such reports, according to petitioner "contain[] the name of the bus operator and his badge number" as well as "the number of the bus, the license plate number, and its route" (Petition ¶ 22). Petitioner contends that such details therefore "identified all relevant information about this accident," and "establishes Respondents' actual notice within 90 days of the loss or within a reasonable" time (id.).
As discussed above, petitioner had left the scene before the investigator arrived. Thus, there is nothing in the Investigative Reports that petitioner was a passenger in the 2015 Toyota, let alone that petitioner had suffered injuries. For example, the Supervisor's Accident/Investigation Report, states, in relevant part:

(see Petitioner's Exhibit C [NYSCEF Doc. No. 6] [emphasis added]). The Operators Daily Trip Sheet stated, in relevant part:

(see Petitioner's Exhibit C). The police accident report stated, in relevant part:

(id. [emphasis added]). Petitioner does not claim that she appears in any of the video footage taken from the bus.
Nevertheless, petitioner argues that Transit Respondents acquired timely, actual knowledge, citing Matter of Williams v New York City Transit Authority (236 AD3d 581 [1st Dept 2025]). Petitioner argues, "An investigation that was not initially geared toward investigating a claim of personal injury can still contain facts and evidence that the trial court can weigh to infer a claim for personal injury" (reply affirmation of petitioner's counsel [NYSCEF Doc. No. 23] ¶ 10).
Previously, in Olivera v City of New York (270 AD2d 5 [1st Dept 2000]), the Appellate Division, First Department had rejected the plaintiff's argument that a police report which indicated that the plaintiff was injured was sufficient to permit amendment of a notice of claim to allege a claim for personal injuries. The Court reasoned:
"the police report on which plaintiff relies, while providing his name and address and indicating that he was injured, does not describe either the nature or severity of his injuries or indicate that he was removed from the accident scene by ambulance to a City hospital. To adopt plaintiff's position that such circumstances gave defendant timely actual notice of the facts constituting his claim would be to substitute police reports for notices of claim in every instance, mandate that defendant investigate every possible cause of action that might be suggested in an accident report" (Olivera, 270 AD2d at 5-6).
Here, the Investigative Reports stated that there were no injuries. Given that the police accident report in Olivera (which indicated that the plaintiff was injured) was ruled insufficient to provide actual knowledge of the essential facts constituting the plaintiff's claims of personal injury, it follows that, under Olivera, the Investigative Reports here similarly could not have provided timely, actual knowledge that petitioner had suffered personal injuries.
Matter of Willams, which petitioner cites, does involve similar facts. There, the Supreme Court granted the petition for leave to serve a late notice of claim, which was affirmed on appeal. The Supreme Court stated,
"Notably the police report does not make any references that Petitioner reported any injuries or that an ambulance or EMS were present. The accident exchange form includes the date of the accident, the insurance information for the bus driver and the address and phone number to the New York City's Transit's Legal Department. The photographs submitted show damage to Petitioner's vehicle by Respondent's bus" (2024 NY Slip Op. 31228[U], *3 [Sup Ct, NY County 2024]).Nevertheless, the Supreme Court granted leave to serve a late notice of claim, reasoning,"in light of the police report, the photographs depicting more than minor damage to Petitioner's vehicle and Petitioner' s affidavit attesting that an investigation by Respondents was conducted, this Court finds that Respondents had sufficient facts to infer committing a potential actionable wrong for more than just property damage but also for personal injury" (id.).
On appeal, the respondents in Matter of Wiliams sought reversal, citing, among other cases, Olivera (see brief for respondents-appellants in Matter of Williams, 236 AD3d 581 [1st Dept 2025], available at 2024 WL 5468075, at *iii [Table of Authorities]).
The Appellate Division, First Department affirmed the court below, "given their employee's involvement in the accident, the police accident report, and the accident information exchange form" (id. at 581). 
Given that the police accident report in Olivera v City of New York was ruled insufficient to constitute actual knowledge, whereas the police accident report and Accident Information Exchange form (which similarly lacked information about any injuries) was ruled sufficient in Matter of Williams, there appears to be a split between the two cases.
It is not necessary for this court either to reconcile the two cases or to determine whether Matter of Willams silently overruled Olivera, because Matter of Williams is distinguishable. 
Here, in the Investigative Reports, Sanchez stated the 2015 Toyota had "scuff marks and broken bumper" (Petitioner's Exhibit C). Thus, unlike Matter of Williams, the record does not support that the vehicle damage was "more than minor damage" (Williams, 2024 NY Slip Op 31228[U], *7). Additionally, unlike Matter of Williams, petitioner does not appear on the police accident report at all. As discussed above, petitioner admitted that she had left the scene without interacting with the bus operator or the MTA Supervisor, and there is no mention of petitioner in the police accident report. Because petitioner is not mentioned anywhere in the Investigative Reports, it is not reasonable to infer from the Investigative Reports that Transit Respondents acquired knowledge that petitioner suffered personal injuries as a result of the accident, especially given the apparently minor property damage mentioned in Investigative Reports in this case.
In sum, petitioner has not demonstrated that Transit Respondents acquired timely actual knowledge of the underlying facts constituting petitioner's claims for personal injuries.
C. Substantial Prejudice
"[T]he burden initially rests on the petitioner to show that the late notice will not substantially prejudice the public corporation. Such a showing need not be extensive, but the petitioner must present some evidence or plausible argument that supports a finding of no substantial prejudice" (Matter of Newcomb, 28 NY3d at 466).[FN1]

"Once this initial showing has been made, the public corporation must respond with a particularized evidentiary showing that the corporation will be substantially prejudiced if the late notice is allowed" (Matter of Newcomb, 28 NY3d at 467). "Substantial prejudice may not be inferred solely from the delay in serving a notice of claim" (id. at 468 n 7).
Petitioner correctly points out that "actual notice of the facts constituting the claim within 90 days of the accident or a reasonable time thereafter also provides a 'plausible argument' that respondents will not be substantially prejudiced in investigating and defending the claim" (Matter of Dubuche v New York City Tr. Auth., 230 AD3d 1026, 1027 [1st Dept 2024]). However, as discussed above, this court rejected petitioner's argument that the Transit Respondents had timely, actual knowledge of petitioner's claims for personal injuries. 
At best, the Transit Respondents had timely, actual knowledge of the accident, but not knowledge of petitioner's involvement or of her injuries. Although the accident was timely investigated, petitioner's claims for personal injuries was not. Thus, petitioner did not meet her initial burden of demonstrating lack of substantial prejudice.
Petitioner correctly points out that, in Matter of Richardson v New York City Housing Authority (136 AD3d 484, 484 [1st Dept 2016]), the Appellate Division, First Department reversed the court below and granted leave to serve a late notice of claim solely because the [*5]respondent was not substantially prejudiced, even though the respondent did not have timely, actual knowledge of the essential facts of the claim and the petitioner lacked a reasonable excuse. 
However, in light of Matter of Jaime v City of New York, which reiterates that courts must place "great weight" on whether respondents had timey acquired actual knowledge of the essential facts, the continued validity of Richardson is questionable, as the lack of substantial prejudice in Richardson was accorded more weight than the respondents' lack of actual knowledge of the essential facts of the petitioner's claim.

 CONCLUSION
Accordingly, it is hereby ADJDUGED that the petition is DENIED and the proceeding is dismissed. 
ENTER:DATE 1/30/2026RICHARD TSAI, J.S.C.

Footnotes

Footnote 1:For example, if a transitory condition allegedly caused the petitioner's injuries, a petitioner demonstrates lack of prejudice if the condition would no longer have existed even if timely service had been made (see Camins v New York City Hous. Auth., 151 AD3d 589, 590 [1st Dept 2017]; Matter of Rivera v City of New York, 127 AD3d 445, 446 [1st Dept 2015]). Or, if a premises condition had not changed since the date of the alleged accident, such that an investigation would still be possible despite the late notice (Fredrickson v New York City Hous. Auth., 87 AD3d 425, 425 [1st Dept 2011]).